UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RENEE DICKENS**,<br><br>                Plaintiff,<br><br>v.<br><br>**LOUIS DEJOY,**<br><br>**Postmaster General,**<br><br>                Defendant. | 2:19-CV-12045-TGB-SDD<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court is Defendant Postmaster General Louis DeJoy's Motion for Summary Judgment as to Plaintiff Renee Dickens' sole claim for disability discrimination under the Rehabilitation Act. For the reasons discussed below, Defendant's motion will be **DENIED IN PART** and **GRANTED IN PART.**

        I.    Background

    Plaintiff Renee Dickens has worked for the United States Postal Service since 1997—more than 28 years. ECF No. 1, PageID.2. Plaintiff is assigned to Tour 3 at the George W. Young Postal Facility, a five-floor facility in Detroit, Michigan. ECF No. 17, PageID.72. She has held the position of Supervisor of Distribution Operations ("SDO") since 2008. ECF No. 18, PageID.394. As SDO, her main task is to supervise and provide instructions to craft employees. *Id.* at PageID.72-73. Craft

1

employees are mail handlers and mail processing clerks who operate mail sorting machines. Plaintiff also supervises lead clerks. Lead clerks assist SDOs and act as the "eyes and ears" of the facility. They make sure that the mail is being processed in accordance with the supervisor's directions.

For instance, lead clerks may operate what is called an automatic parcel bundle sorter ("APBS"), a large machine that processes mail into bins so that it can be dispatched for delivery. ECF No. 17, PageID.73. The lead clerks and mail handlers feed mail onto the machine for sorting. Another machine craft employees operate is the processing, addressing, redirecting services ("PARS") machine, which processes forwarded mail. *Id*. SDOs perform their duties by sitting in front of, or near, the APBS and PARS machines. *Id*. at PageID.74. The employees on the floor, on the other hand, communicate to each other using portable walk-talkies. *Id*. at PageID.73. Since August 2019, Plaintiff's lead clerk has been Mary Alston. *Id*.; ECF No. 18, PageID.394.

SDOs like Plaintiff report to Managers of Distribution Operations ("MDOs"). ECF No. 17, PageID.74. Plaintiff's MDOs have included at various times Raymond Sherrod, Angela Johnson, Monesha Lawson, Latisha Austin-Vaughn, and Quindell Atkins. *Id*. MDOs then report to Plant Manager Ralph Forbis.

In the fall of 2016, Plaintiff was also diagnosed with lupus/venous stasis ulcers. ECF No. 1, PageID.2. Venous stasis ulcers are the result of the breakdown in the soft tissue caused by congestion or poor drainage.

2

ECF No. 17-8, PageID.290. Her condition—which qualifies as a disability—causes bilateral swelling, pain, and ulcers. ECF No. 1, PageID.2.

As a result of Plaintiff's condition, her physician, Dr. Emmanuel Dizon, M.D., authorized work restrictions for her. ECF No. 17-8, PageID.305. Dr. Dizon completed a "Duty Status Report," otherwise known as "CA-17," for Plaintiff. He recommended that Plaintiff's work restrictions include four hours of walking and standing in an eight-hour shift, as well as discretion to sit and stand. Plaintiff also has the opportunity to use intermittent sitting. *Id*.

Plaintiff thereafter sought and acquired disability benefits under the Federal Employees Compensation Act ("FECA") because of her condition. ECF No. 17-2, PageID.162. These benefits are administered by the Office of Worker's Compensation Programs ("OWCP"). *Id*. OWCP determined that her ulcers were work-related. *Id*. This determination entitled Plaintiff to reimbursement for wage loss and work missed as a result of her ulcer. *Id*. Plaintiff also submitted her CA-17 to MDO Sherrod.

Sherrod offered Plaintiff a limited duty, modified job assignment. This offer was recorded in a document called "PS Form 2499." ECF No. 17-11. A Form 2499 is a type of accommodation offered under FECA. ECF No. 17, PageID.76. It is offered to employees with work-related medical restrictions. The employee and employee's supervisor meet and review

3

potential duties and physical requirements necessary to perform those duties. The parties then decide whether the physical requirements are appropriate based on the employee's medical restrictions. *Id*. The employee is free to discuss and negotiate with the supervisor regarding any of terms or modifications if the employee does not feel comfortable with it. *Id*. An employee is also free to reject an offer contained in the Form 2499. *Id*. at PageID.76-77. An employee should not accept a Form 2499 offer if its terms are inconsistent with his or her medical restrictions. *Id*.

In August 2018, Plaintiff and MDO Sherrod discussed the terms offered in Plaintiff's Form 2499. *Id*. The physical requirements under the Form 2499 provided Plaintiff with the options to sit intermittently for eight hours, sit/stand for eight hours, and work within restrictions for eight hours. *Id*. Despite its terms, Plaintiff voiced her concerns that her medical needs were inconsistent with the accommodations outlined in the Form 2499. *Id*. at PageID.78. MDO Sherrod told Plaintiff she did not have to sign the Form 2499 if she did not agree to it. But Plaintiff checked the "I accept" item, thereby acknowledging that she did in fact accept the Form 2499. *Id*. And because Plaintiff insisted that the Form 2499 should contain the specific medical restrictions outlined in her CA-17, she wrote "Not accord to my CA-17" in the margin of her Form 2499. *Id*. Plaintiff's physician, Dr. Dizon, however, confirmed later in a deposition that the

4

terms in Plaintiff's Form 2499 were consistent with her medical restrictions. *Id.*

Plaintiff thereafter alleges that MDOs and other upper managers directed her to violate her workplace restrictions. Plaintiff states that she has been repeatedly and intentionally required to work outside of her restriction. For instance, Plaintiff cites that the APBS computer monitors do not show everything about the operations so Plaintiff has to physically walk around the facility. ECF No. 18, PageID.396. And even though there are about three chairs, some are often broken. *Id.* When Plaintiff tries to sit to supervise PARS, she often finds no chairs available there to allow her to do so. *Id.* And sometimes there is no chair at all. *Id.* Instead, there is only a yellow railing that Plaintiff leans on. This yellow railing, however, is not designed for sitting.

Plaintiff attests that despite the lack of chairs, MDO Sherrod ordered her to supervise those machines for more than four hours, in violation of her restrictions. *Id.* at PageID.400. Plaintiff is concerned that if she does not complete such tasks even though it would be in violation of her restrictions, she would be punished.

Plaintiff also alleges that she submitted numerous requests for accommodations to her work restrictions. Plaintiff's supervisors, however, denied her requests. Plaintiff asserts that she was denied these requests because of her need for accommodations. She claims to have applied for numerous accommodations, including modifications,

5

reassignments, and transfers. For instance, Plaintiff applied for details. ECF No. 18, PageID.407-08. When Plaintiff would apply, the decision maker would point out that Plaintiff would not be able to walk for four hours. Or the decision maker would question Plaintiff's qualifications because of her need for accommodations. *Id.* at PageID.408. In another instance, Plaintiff applied for an MDO position. But, she claims, Plant Manager Forbis asked Plaintiff whether she could get off restrictions so that she would become eligible. *Id.* at PageID.409.

As a result of these events, Plaintiff filed this suit. Plaintiff raises one claim: Defendant has violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ECF No. 1, PageID.5. The Complaint alleges that Defendant's violations included requiring Plaintiff to work outside of her restrictions and denying Plaintiff's requests for reasonable accommodation. *Id.* Plaintiff seeks damages, including lost wages, front pay, lost benefits, damages for physical, mental, and emotional distress, interest, costs, and attorneys' fees. *Id.*

Defendant moves for summary judgment on Plaintiff's claim. ECF No. 17. The matter is fully briefed and the Court heard oral argument on August 9, 2021.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material

only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. "[A] mere scintilla of evidence in support of the nonmovant's position is not sufficient to create a genuine issue of material fact." *Towner v. Grand Trunk Western R. Co.*, 57 Fed. App'x 232, 235 (2003) (citing *Anderson*, 477 U.S. at 251-52). Rather, the non-moving party must present sufficient evidence as to each element of the case such that a trier of fact could reasonably find for the plaintiff. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Discussion

Plaintiff claims that Defendant violated her rights as a disabled person under the Rehabilitation Act. Plaintiff alleges that supervisors at the facility required her "to work continuously outside of her restrictions and by refusing to provide reasonable accommodations such as job modification, assistance, reassignment, and transfer into other positions for which Plaintiff is qualified and that are open." ECF No. 1, PageID.5. Plaintiff cites, for instance, that numerous supervisors "directed Plaintiff to work outside of her medical restrictions every day of her employment since the medical restrictions were first presented." *Id.* at PageID.3. They also "mischaracterized Plaintiff's restrictions as permitting her to stand/walk continuously for 4 hours in an 8-hour day, which has never been the case." *Id.* at PageID.3-4.

Plaintiff's employer also failed to provide reasonable accommodations even though Lawson, another MDO at the facility, "admitted that Plaintiff could perform her job with her requested accommodations." *Id.* at PageID.4. Plaintiff also requested transfer into other positions at the facility, but the supervisors denied her request on the "false belief that Plaintiff could not perform any of these positions because 'she could not walk.'" *Id.* at PageID.4.

Defendant moves for summary judgment on Plaintiff's claim. ECF No. 17. Although Defendant challenges all the elements of a disability discrimination claim, the focus of his argument is on whether he denied

8

Plaintiff's requests for reasonable accommodation. *Id.* at PageID.89. Specifically, Defendant argues that it was Plaintiff's burden to police her own medical needs and to inform her supervisors when she needed an accommodation for a task. Defendant further argues that to the extent that Plaintiff performed tasks that would require her to violate her restrictions, she chose to violate them on her own and without any coercion from her supervisors. Defendant also argues that Plaintiff was never punished for refusing to perform a task, which is proof that she was not discriminated against on the basis of her disability.

The Sixth Circuit outlined the test for assessing a disability discrimination claim under Rehabilitation Act in *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004). A plaintiff raising a disability discrimination claim must show that "(1) she is a disabled person under the Act; (2) she is otherwise qualified; and (3) she was denied a reasonable accommodation solely by reason of her disability." *Id.*

Under *Morrissey*, Defendant had notice of Plaintiff's disability when Plaintiff told her supervisors about her qualifying condition in 2016. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300 (6th Cir. 2019) (citing *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999)).

The test for "otherwise qualified despite her disability" is satisfied upon showing that she may fulfill the position "(a) without accommodation from the employer; (b) with an alleged essential job

9

requirement eliminated; or (c) with a proposed reasonable accommodation." *Morrissey*, 946 F.3d at 299.

Here, Plaintiff is otherwise qualified despite her disability. The record shows that her employer accommodated her medical restrictions by detailing her discretion to sit and stand for 4 hours each in a given workday. It is of note that Plaintiff had this accommodation for years. Furthermore, there is nothing in the record showing that she is unable to do the essential functions of her position with or without accommodations.

Plaintiff, furthermore, offers the proposition that employers have an obligation to participate in a "good faith" and "interactive process" with employees who have a qualifying disability and can perform the "essential functions" of a position with a reasonable accommodation. *Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004); *see also Brown v. Chase Brass & Copper Co., Inc.*, 14 Fed. App'x 482, 487 n.2 (6th Cir. 2001) (holding that an employer's unwillingness to engage in a good faith interactive process to accommodate a disabled employee creates liability under the ADA). A reasonable accommodation means modifications to the manner or circumstances that a position held or desired is customarily performed. *Smith*, 376 F.3d at 534-35 (internal quotation marks omitted). An employer may rebut this obligation by showing that the accommodation would have imposed an "undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). Moreover, Plaintiff may

prove a denial of reasonable accommodation by either direct or indirect evidence. *Morrissey*, 946 F.3d at 298.

Plaintiff states that Defendant discriminated against her on the basis of her disability because MDOs denied her various requests for additional accommodations. ECF No. 18, PageID.416-17. Below the Court will discuss the specific kinds of accommodations Plaintiff had requested, and whether there is a disputed issue of material fact as to whether Defendant denied any of them "solely because of her disability." *Id.* at 417.

    *a. Adherence to medical restrictions*

Defendant argues that it is up to Plaintiff to police her medical restrictions and to inform supervisors when an assigned task would cause her to violate her restrictions.

In response, Plaintiff offers *Smith v. Henderson* for the proposition that the employee does not need to engage in self-policing of her own medical accommodations. ECF No. 18, PageID.411 (citing 376 F.3d 529 (6th Cir. 2004)). In other words, Plaintiff argues that it is a denial of a reasonable accommodation to require her to work outside of her restrictions.

The Sixth Circuit in *Smith* considered an employer's alleged refusal to provide a reasonable accommodation. *Id.* at 534. The plaintiff was a postal worker who brought a case against her employer alleging, among other things, disability discrimination. The plaintiff stated that the

11

employer "failed to reasonably accommodate her disability as required by the Rehabilitation Act and that the failure-to-accommodate precipitated her involuntary resignation." *Id*. The district court granted summary judgment in favor of defendant because it found that the plaintiff could not state a prima facie discrimination claim under the Rehabilitation Act. Specifically, the district court found that the plaintiff did not suffer an adverse employment action because the employer's allegedly discriminatory conduct was not so intolerable as to compel a reasonable person to resign. The plaintiff appealed the lower court's ruling.

On appeal, the Circuit Court of Appeals found that the plaintiff had a qualifying disability and that she was therefore entitled to a reasonable accommodation. The court also observed that the plaintiff made numerous requests that could be properly characterized as requests for an accommodation—even though she did not say it in those words. *Id*. at 535. The record showed, however, that her supervisors did not consider her requests and denied them. Her supervisors accused her of whining and told her that she was "now in a man's world." *Id*. at 536. The court held that this established a genuine issue of material fact as to whether plaintiff's requests for reasonable accommodation obligated her employer to engage in a "good faith" and "interactive process." *Id*.

Here, Plaintiff's supervisors asked—but did not coerce—Plaintiff to engage in activity that would violate her restriction. Thus, the question is whether an MDO merely asking Plaintiff to perform a task that would

12

cause her to violate her restriction is enough to constitute a denial of her medical restriction accommodation.

Defendant responds that it is Plaintiff's responsibility to police her medical condition and to inform others if a particular task would cause her to violate her restrictions. Defendant relies on the First Circuit's decision in *Murray v. Warren Pumps, LLC* for the proposition that the burden to police Plaintiff's accommodation falls solely on herself. 821 F.3d 77 (1st Cir. 2016). In *Murray*, the plaintiff sued his former employer and its parent company for violations under the ADA. *Id*. at 81. The plaintiff worked at a manufacturing company as a health and safety compliance officer. *Id*. The plaintiff also suffered from a permanent back condition. The defendant employer was aware of plaintiff's physical limitations as a result of his back condition. The plaintiff and defendant reached an agreement where the company would accommodate his physical limitations, such as restrictions from extended walking, standing and sitting, and from lifting objects heavier than 10 pounds. They agreed that the plaintiff would self-monitor his workplace activities and accommodate his back problems as he saw fit. *Id*. at 82. Despite this arrangement, the parties had a falling out. The defendant offered two options for separation, but the plaintiff accepted neither and was then terminated.

Plaintiff filed suit against Defendant and advanced several theories of disability discrimination. Relevant here is the plaintiff's claim for

13

failure to provide reasonable accommodation. The First Circuit rejected this theory as a matter of law. It found that the plaintiff was not improperly denied reasonable accommodations. Instead, the court observed that the plaintiff assumed his supervisor's requests were deliberate requests to violate his medical restrictions. The defendant employer, furthermore, could not be faulted under a theory of failure-to-accommodate when the plaintiff "opted to remain silent or when he voluntarily chose to participate in certain activities, or when he otherwise failed to police his own physical needs (as the parties had agreed.)" *Id*. at 86. The First Circuit affirmed the district court's decision to grant summary judgment in favor of the defendant. *Id*.

Here, although Plaintiff "voluntarily chose to participate in certain activities," *see id.*, the nature of her voluntariness is arguable. That is because the record fails to show that any of Plaintiff's supervisors coerced or pushed Plaintiff to engage in tasks that would violate her restrictions. But on the other hand, the record also shows the numerous times in which Plaintiff was left in the difficult position of having to complete a task that would cause her to violate her restrictions. Despite her accommodations existing on paper, they were not always available or enforceable in practice. Plaintiff says she assumed that she would be punished, but there is no evidence of her supervisors punishing her. However, because she was often left without any viable recourse or effective support from her superiors, her assumption that she could face

14

an adverse consequence if she did not complete the task was not entirely unfounded or unreasonable.

Absent an agreement that Plaintiff—and not Defendant—would be responsible for enforcing her medical restrictions, however, Defendant is similarly obligated to monitor Plaintiff's condition and to take it into account when assigning her tasks. In *Murray*, the employer and employee had an explicit agreement that the employee would monitor his own restrictions. Although *Murray* states that Plaintiff here is not solely responsible for policing her restrictions, under *Smith*, Plaintiff's supervisors too have an ongoing obligation to engage in a "good faith" and "interactive process." This means that when Plaintiff *does* speak up, her employer needs to attempt in good faith to find a way to provide her reasonable accommodation.

The record instead shows instances where Plaintiff would speak up about how she does not have the physical capacity to perform a task, or that a task would cause her to violate her medical restrictions. Her supervisors rebuffed her concerns and left her with little recourse such that she was effectively denied a reasonable accommodation. At the same time, however, Plaintiff's own descriptions of these instances suggest that the facility was overworked and understaffed, and that many further accommodations would cause an "undue hardship" on the workforce. As such, there exists a genuine issue of material fact as to whether Plaintiff was denied reasonable accommodation when she was asked to perform

15

tasks that would cause her to violate her restrictions. And there also exists a genuine issue of material fact as to whether providing further accommodation would have caused Defendant an "undue hardship."

Consequently, the Court will deny summary judgment as to the issue of whether Defendant violated Plaintiff's rights under the Rehabilitation Act by causing her to violate her restrictions.

### b. *Job assistance*

Plaintiff states that she requested job assistance as a reasonable accommodation to her medical restrictions. According to the record, Defendant provided Plaintiff a lead clerk and other helpers as a form of accommodation. ECF No. 17, PageID84. The Form 2499 also authorized Plaintiff to have a "sit/stand option" and for "sitting intermittently" to accommodate her restrictions. ECF No. 17-11.

The problem here, however, is that according to the record, there are not always chairs available or accessible to Plaintiff. Sometimes, the chairs are also broken. *See* ECF No. 18, PageID.396. If the places where Plaintiff must spend a substantial amount of her working hours do not include adequate places to sit, or designated areas for her to sit, then this amounts to a denial of a reasonable accommodation. Furthermore, Defendant has not shown that providing more places to sit or designated areas for only Plaintiff to sit would amount to an "undue hardship."

Plaintiff is also provided a "lead clerk" to be her "eyes and ears" on the floor and to perform manual tasks. Plaintiff, however, does not

16

always have access to a lead clerk. When a manual task needs to be performed and no lead clerk is available, Plaintiff has been told by upper management to "do what you gotta do." ECF No. 18, PageID.394-95. Plaintiff also states that she is discouraged from using "lead clerks" for her purposes. *Id.*

As such, because there is a genuine issue of material fact as to whether Defendant's job assistance accommodation is adequate for Plaintiff to perform her job, summary judgment is denied.

### c. *Job transfer*

Plaintiff further claims that she has requested job transfers as a reasonable accommodation. Plaintiff cites that she is qualified "for the positions of attendance control, in-plant support, injury comp, safety, OIC and Tour 3 MDO." ECF No. 18, PageID.417.

To make this claim, Plaintiff has to show that there was a job available and that she was qualified for the position "with or without accommodation." *See Peltier*, 388 F.3d at 989. Although Plaintiff states that she asked for job transfers, she does not establish that there were vacancies in the requested positions for attendance control or injury comp. As for PEDC, *i.e.*, "the training room," and MDO, Plaintiff has not offered proof that she was qualified for these positions. ECF No. 18-2, PageID.450-51. For the reasons set out in detail below, Defendant is entitled to summary judgment to the claim that she was denied the accommodation of a job transfer.

17

Plaintiff states, for instance, that she worked as attendance control from April 2018 to July 2018 on ad hoc basis when there was a need for it. ECF No. 17-2, PageID.192. This statement would appear to be counter to her assertion that she was denied a job transfer; it shows that she was granted a transfer when the position was available. Although Plaintiff argues that she is qualified for these positions, she offers no proof that these positions had vacancies at the time of her request. Plaintiff needs to establish that when she made these requests to transfer, there were available openings.

As for the position of in-plant support, Plaintiff offers proof that she applied for the position and was denied on the basis of her disability. ECF No. 17-2, PageID.193-200. But she concedes that she was not sure if there was an available vacancy. *Id.* at PageID.200 ("I don't know that there was a detail posted or not. I just asked for it.").

Next, Plaintiff states that she applied for a position as injury comp and was assigned to work that detail for a period of time. *Id.* at PageID.202. "There was a need, so they put me in there." *Id.* But at some point Plaintiff was taken off the position and that vacancy was filled by another employee. *Id.* ("They gave it to someone else who came in after me."). Plaintiff does not say that she was removed from this injury comp position because of her disability, or that she requested it as a permanent transfer. It appears that her assignment was temporary, and when the position was filled by another employee it was no longer available.

18

As for the position of PEDC, although there was an availability at the time that Plaintiff applied, she was not qualified. *Id.* at PageID.215. The record shows that Defendant denied her the position because the decision maker "needed someone with a little bit more experience…she wanted someone that was experienced and that…[could] get up and just start going." *Id.* Thus, Plaintiff has not shown that she was qualified for this position that was otherwise available.

Finally, Plaintiff applied for the MDO position but was denied. ECF No. 17-2, PageID.227. Plaintiff states that there was an availability, but that the position was offered to someone else. She has not offered proof, however, that she was qualified. She cites her experience but then admits that "seniority is not a consideration" for the position. *Id.* She also cites the fact that she had to show the person who did get the position the layout of a building. But that, by itself, does not establish that she was qualified for the position. *Id.*

At bottom, Plaintiff needs to show that she applied for a position that had an opening and that she was qualified for it. She has offered proof satisfying one element, but not the other, for each position for which she applied. That is not sufficient as a matter of law. This claim therefore fails.

### d. *Job reassignment*

Plaintiff's position was modified so that she can sit/stand at her discretion and work within her medical restrictions. A "Form 2499"

constitutes a "job offer," and may therefore also qualify as a "job reassignment" accommodation. ECF No. 17, PageID.76-77. Therefore, this claim also fails as a matter of law because Defendant has provided a reasonable accommodation to this request.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be **DENIED IN PART** as to the issues of whether Plaintiff was discriminated against on the basis that she was required to violate her medical restrictions and for failure to provide her adequate job assistance in the form of available sitting areas and effective lead clerks. As to the issues of job transfer and reassignments, the record presents no genuine issue of material fact, so summary judgment is **GRANTED IN PART** to Defendant as to those theories alleged by Plaintiff.

**IT IS SO ORDERED.**

Dated: September 22, 2021   s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE